## F. W. Harding v. Frank Thuet, et al.

### Gen. No. 12,293.

1.  CHATTEL MORTGAGE—*when invalid as against third parties.*    A chattel mortgage is invalid as to third parties which permits the possession of the property pledged to remain with the mortgagor, if such mortgage is not recorded in the county in which such mortgagor resided at the time of its execution.

2.  INSTRUCTION—*must not ignore material issue.*    An instruction which concludes with a direction to the jury to find in a particular

way if certain facts are found, must necessarily contain all the facts which will authorize a verdict.

Action of trover. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1905. Reversed and remanded. Opinion filed February 13, 1906.

PHELPS & CLELAND, for appellant; VICTOR M. HARDING, of counsel.

ERIC WINTERS, for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an action in trover for 53 head of cattle, and was originally commenced against the appellant and three others, but was dismissed against all defendants except appellant. The plea was not guilty. The jury found the issues for the plaintiffs and assessed their damages at the sum of $2,220, and the court, after overruling the defendant's motion for a new trial, rendered judgment on the verdict. The plaintiffs, at the time of the transactions in question, were engaged in the business of live stock commission in the city of Chicago, Illinois. The plaintiffs' claim is based on the following described mortgage: One J. B. Russell, October 8, 1901, executed to the plaintiffs, by the name of Thuet Bros., a chattel mortgage of cattle thus described in the mortgage: "One hundred eight steer cattle, averaging about twelve hundred (1200) pounds in weight, mostly reds and roans, being the same cattle covered in mortgage to Sansom Thayer Com. Co., dated April 5, 1901. These cattle are being cared for on the Tom Hainline pasture, located two and one-half miles south of Sciota, in McDonough County, Illinois. Said pasture consists of 227 acres and is now leased by J. B. Russell." The mortgage was made to secure payment of a promissory note made by J. B. Russell to the order of the plaintiffs, dated October 8, 1901, and payable six months after date, for the sum of $4214, with interest at 7 per cent per annum. The mortgage was acknowl-

edged October 10, 1901, in Roseville, Warren County, Illinois, and was recorded October 25, 1901, in McDonough County. J. B. Russell, the mortgagor, resided in Roseville, Warren County, Illinois, at the time he executed the mortgage, and had lived there for twenty years and in Warren County for over forty years. The mortgage was not recorded in Warren County. The defendant was cashier of the Second National Bank of Monmouth, and claims for the bank the cattle which were in the Hainline pasture, in McDonough County, under the two chattel mortgages hereinafter described: A chattel mortgage dated May 18, 1901, executed by Robert McLaughlin to J. B. Russell, conveying "fifty-four steers, being mostly dehorned and mixed in colors, and average 1200 pounds each; are now on pasture on section thirty-six, Roseville township, Warren County, Ill." The mortgage is expressed to be made to secure payment of a note dated May 18, 1901, due six months after date, to the order of J. B. Russell, for the sum of $2255.90, with interest at 7 per cent per annum after maturity. The mortgage was acknowledged in Warren County, where McLaughlin lived, May 20, 1901, and was recorded in said county May 22, 1901. The note referred to in the mortgage is indorsed "J. B. Russell." The note and mortgage were made to take up another note and mortgage, of date November 20, 1900, made by McLaughlin to J. B. Russell, the mortgage being of 54 steers described as being on the Marion Blue farm. The note and mortgage of November 20, 1900, were transferred by Russell to the Second National Bank of Monmouth, the bank paying therefor the sum of $2,176, less the interest on the note.

A chattel mortgage of date September 9, 1901, executed by R. W. McCurdy to J. B. Russell, conveying, as expressed in mortgage, "sixty-four steers, being mixed in colors, and average in weight twelve hundred and fifty pounds each, are in my possession, and are now located where I now live, one mile west of Sciota, McDonough County, Illinois." This mortgage was made to secure a note of McCurdy, of even date with the mortgage, for $3136.48, payable to the order

of J. B. Russell, with interest at 7 per cent per annum after maturity, and is endorsed "J. B. Russell."

This note and mortgage were transferred by Russell to the Second National Bank of Monmouth, the bank paying for it $3,136.48, less interest for six months. It will be observed that at the date of the Russell mortgage to the plaintiffs, October 8, 1901, the McLaughlin and McCurdy mortgages, above described, were in full force.

Each of the mortgagors, Robert McLaughlin and R. W. McCurdy, notified the bank that he desired to turn over to it the cattle described in his mortgage to Russell, to which the bank acceded, and each of them turned over to the possession of the defendant, for the bank, cattle in the Hainline pasture, which he claimed were the cattle covered by his mortgage.

November 6, 1901, the defendant, Harding, representing the bank, accompanied by Robert McLaughlin and Roy McCurdy, son of Robert McCurdy, and others, went to the Hainline pasture and selected the 54 head of cattle, which McLaughlin claimed were covered by his mortgage to Russell, and which the latter had transferred to the bank, and drove them to Sciota, Mr. Harding agreeing to settle the rent of the pasture with Tom Hainline, who had charge of it. The next day, November 7, 1901, Mr. Harding, defendant, went again to the Hainline pasture, accompanied with his brother, Robert McCurdy, H. B. Smith and a constable, and took therefrom 43 head of cattle which McCurdy claimed were included in his mortgage to Russell and which was held by the bank. Representatives of the plaintiffs were present on both occasions, but, as we think the evidence clearly shows, plaintiffs were never in possession of any of the cattle taken by the defendant on the McLaughlin and McCurdy mortgages. However, there is evidence tending to prove that on November 7th, when the 43 head of cattle were taken from the pasture by the defendant, a demand for possession of them was made by a representative of the plaintiffs on the constable who had them in charge for defendant.

The Hainline pasture was leased to J. B. Russell for the year 1901, in accordance with an arrangement made in 1900 by Tom Hainline, who had charge of the pasture, with Russell and R. W. McCurdy, and the rent, $600, had not been paid for the pasturage in 1901. It appears from the evidence of Hainline that in the year 1900, Russell and McCurdy were jointly liable for the rent. Mr. Harding, defendant, paid the $600 to Hainline when he took the 43 head out of the pasture. The main controversy between the parties on the trial was, and is here, whether or not the cattle in the Hainline pasture, taken on the McCurdy mortgage, are the cattle described in that mortgage, the plaintiffs claiming that they are not, but are the cattle described in the mortgage of October 8, 1901, executed by Russell to them, and the defendant claiming the contrary. There is conflicting evidence on the question, which is too voluminous to be referred to at length; but after carefully reading and considering the evidence on the question, we think the preponderance of it is with the defendant. The chief question of law in the case is, whether the Russell mortgage to the plaintiffs' not having been recorded in Warren County, where Russell lived when he executed the mortgage, which fact appears in the mortgage, and by his own testimony, can prevail as against the McCurdy mortgage under which the defendant claims. We are of opinion that it cannot. The burden was on the plaintiffs to prove that the 43 head of cattle taken from the Hainline pasture on the McCurdy mortgage were included in the Russell mortgage to them. On the hypothesis that the same cattle are included in the Russell mortgage and in the McCurdy mortgage, which we think not improbable, in view of the evidence as to Russell's financial embarrassment when he made the former mortgage, and as to his bad reputation for truthfulness and honesty, and other evidence in the record, the McCurdy mortgage must prevail. Plaintiffs' claim, however, is that the 43 head of cattle taken by the defendant from the Hainline pasture, are not included in the McCurdy mortgage and are included in their mortgage. Section 1 of the statute in respect to

chattel mortgages is as follows: "That no mortgage, trust deed or other conveyance of personal property, having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed; and every such instrument shall, for the purposes of this act, be deemed a chattel mortgage." Hurd's Rev. Stat. 1903, p. 1270. Section 2 of the statute provides: "Such instrument shall be acknowledged before a justice of the peace of the county where the mortgagor resides; or if the mortgagor is not a resident of this State, at the time of making the acknowledgment, then before any officer authorized by law to take acknowledgment of deeds." Section 4 provides: "Such mortgage, trust deed or other conveyance of personal property, acknowledged as provided in the act, shall be admitted to record by the recorder of the county in which the mortgagor shall reside, at the time when the instrument is executed and recorded, or in case the mortgagor is not a resident of this State, then in the county where the property is situated and kept, and shall, thereupon, if *bona fide* made, be good and valid from the time it is filed for record until the maturity of the entire debt or obligation," etc.

J. B. Russell, at the time he executed the mortgage to the plaintiffs, was and had been, for a number of years, a resident of Roseville in Roseville township, Warren county, Illinois. The Russell mortgage was acknowledged before a justice of the peace in Roseville township, in Warren county, but was not recorded in that county. It was recorded in McDonough county, Illinois. Therefore, by the express terms of the statute, the mortgage *not having been recorded in Warren County,* where Russell lived, is invalid as against the rights and interest of third persons. The statute, in allowing possession to remain with the owner, is in derogation of the common law, and must be strictly construed, and the Supreme Court has held, in numerous cases, that a

chattel mortgage not acknowledged and recorded as prescribed by the statute is invalid as to third persons, although it may be effective as between the mortgagor and the mortgagee.    Davis v. Ransom, 18 Ill., 396, 401; Porter v. Dement, 35 ib., 478; Frank v. Miner, 50 ib., 444; McDowel v. Stewart, 83 ib., 538; Blatchford v. Boyden, 122 ib., 657; Long v. Cockern, 128 ib., 29.

In Porter v. Dement the court say: "As between the parties, a chattel mortgage is valid without acknowledging and recording; but it has no effect on the rights of third parties acting in good faith."    McDowel v. Stewart, *supra,* is to the same effect.

In Long v. Cockern, *supra,* the court say: "The rule is well settled that a chattel mortgage not acknowledged as required by the statute, is void as to creditors and purchasers, notwithstanding actual notice."

In this case we incline to the opinion that the greater weight of the evidence is that the 43 head of cattle taken by the defendant were cattle included in the McCurdy mortgage, which was assigned by Russell to the Second National Bank.    To say the least, the evidence is so conflicting that the instructions should have been accurate.

Instruction 1 for plaintiffs is as follows: "The jury are instructed that if they believe from the evidence that, on October 8, 1901, one J. B. Russell was the owner of certain cattle in the Hainline pasture, in McDonough County, Illinois, and that he gave a chattel mortgage upon the same, on said date, to the plaintiffs in this suit, to secure a *bona fide* indebtedness, and that on or about November 7, 1901, the defendant had actual possession of the same, and that on said date the plaintiffs made a demand upon said defendant for such cattle, and that defendant refused to deliver the same to plaintiffs, then, unless you believe further from the evidence that said Russell had given a chattel mortgage, which was still in force on November 7th, 1901, to the defendant or some other person, before the making of such mortgage to plaintiffs, and on or before November 7th, 1901, you will give your verdict for plaintiffs and assess

their damages at such amount as you believe from the evidence was the value of the same at the time of making such demand, and interest thereon at the rate of five per cent. per annum, from the time of such taking down to the present time."

This instruction warranted the jury in finding for the plaintiffs, unless they believed from the evidence that Russell, before he executed the mortgage to the plaintiffs, executed a chattel mortgage to the defendant or some other person, which chattel mortgage was in force November 7, 1901. There was no evidence whatever that Russell had made any chattel mortgage of the cattle in question before executing the mortgage to the plaintiffs, and, therefore, the jury could not believe from the evidence that he had; so that if the jury had followed the instruction, they must have found for the plaintiffs, if they believed from the evidence that Russell was the owner of the cattle and that he executed to the plaintiffs the mortgage of October 8, 1901. The instruction wholly ignores the claim of the defendant, which the evidence tends to support, that the Second National Bank of Monmouth is the owner of the McCurdy note and mortgage to Russell, transferred by the latter to the bank, and that said mortgage includes the cattle in question. The instruction is clearly erroneous. Instruction 2 contains the same error.

"If an instruction directs a verdict for either party, or amounts to such a direction, in case the jury shall find certain facts, it must, necessarily, contain all the facts which will authorize the verdict directed, * * * and the error in such an instruction is not obviated by giving conflicting instructions." Partridge v. Cutler, 168 Ill., 504, 512. The following cases are to the same effect: Lake Erie & W. R'd Co. v. Wilson, 189 Ill., 89, 97-8; Ill. Iron & Metal Co. v. Weber, 196 ib., 526; Ill. Central R'd Co. v. Smith, 208 ib., 608; Ill. Terra Cotta Lumber Co. v. Hanley, 214 ib., 243.

The giving of the instructions mentioned was reversible error.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*