### In re BECKHAUS.

### RASMUSSEN v. McKEY.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

#### No. 1,564.

1. BANKRUPTCY (§ 184*)—LIENS—CHATTEL MORTGAGE—RECORD—STATUTES.

Bankruptcy Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (U. S. Comp. St. Supp. 1909, p. 1314), provides that a person shall be deemed to have given a preference if, being insolvent, he has, within four months before filing the petition, made a transfer of any of his property, the enforcement of which will enable one of his creditors to obtain a greater percentage of his debt than other creditors of the same class, and that, where the preference consists of a transfer, the four months' period shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording and registering is required. Held, that it is sufficient to entitle the trustee to refuse to recognize a chattel mortgage alleged to constitute a preference because of want of record, if by the local law such instruments are required to be recorded for any purpose; it being immaterial that they may be valid as between the parties without record under the state law.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*]

2. BANKRUPTCY (§ 184*)—LIENS—CHATTEL MORTGAGES—RECORD—"THIRD PERSON."

The term "third person," as used in 2 Starr & C. Ann. St. Ill. c. 95, § 1, providing that a chattel mortgage shall not be valid as against the interests of any third person, unless possession shall have been delivered, or unless the instrument shall be recorded, etc., includes every one outside of the immediate parties to the instrument and their privies, both the mortgagor's trustee in bankruptcy and his simple contract creditors, though not having reduced their claims to judgment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*

For other definitions, see Words and Phrases, vol. 8, p. 6960.]

3. CREDITORS' SUIT (§ 11*)—ELEMENTS—NECESSITY OF JUDGMENT.

The rule that the creditor must first recover judgment before he may recover equitable assets affects the remedy only, and not the right, so that, where the recovery of a judgment becomes impracticable, it is not an indispensable requisite to enforcing the creditor's rights.

[Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 46–66; Dec. Dig. § 11.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Petition for Revision of Proceedings of the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of bankruptcy proceedings against Charles F. Beckhaus. On petition of M. C. Rasmussen to recover certain merchandise, fixtures, book accounts, etc., under a chattel mortgage from Frank M. McKey, the bankrupt's trustee. Petition to review and revise an order denying the petition. Dismissed.

In October, 1907, Beckhaus was adjudged a bankrupt, and respondent came into possession of property consisting of a stock of merchandise, fixtures, book accounts, etc., as the property of the bankrupt. Rasmussen, petitioner here, filed a petition in the District Court, asking that respondent be ordered to surrender the property to the petitioner. The petition was based on a written agreement entered into on March 6, 1907, by Beckhaus, of the first part, Rasmussen, of the second part, and certain of the pre-existing creditors of Beckhaus, of the third part, whereby Beckhaus transferred the property to Rasmussen to hold, use, and ultimately dispose of for the benefit of the first and third parties. On issues joined the District Court found that on March 6, 1907, at and before the time the agreement was made, Beckhaus was insolvent, and so remained; that the agreement was never recorded; that Rasmussen never took notorious, exclusive, or continuous possession of the property, but Beckhaus was permitted to remain, and did remain, in possession until the petition in bankruptcy was filed and respondent came into possession, first as receiver, and then as trustee; that Beckhaus intended to prefer said third parties, and said third parties had reasonable cause to believe that Beckhaus intended by such transfer to give them a preference; and that the effect of the enforcement of such transfer would be to enable said third parties as creditors of Beckhaus to obtain a greater percentage of their debts than any other of Beckhaus's creditors of the same class. Being of the opinion that the agreement of transfer, within the meaning of section 60a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1909, p. 1314]), was "required" to be recorded under the law of Illinois, the District Court adjudged that the petitioner take nothing.

Section 60a: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

Section 60b: "If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

Section 3b: "A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act. Such time shall not expire until four months after (1) the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay, or defraud his creditors or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property unless the petitioning creditors have received actual notice of such transfer or assignment."

Section 1, c. 95, 2 Starr & C. Ann. St. Ill.: "Be it enacted by the people of the state of Illinois, represented in the General Assembly, that no mortgage, trust deed or other conveyance of personal property having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinbefore directed; and every such instrument shall, for the purposes of this act, be deemed a chattel mortgage."

Harry G. Colson, for petitioner.

Julius Moses, for respondent.

Before GROSSCUP, BAKER and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). 1. On the basis that the Illinois statute, as construed by the courts of the state, does not declare unrecorded chattel mortgages void except as against the rights and interests of innocent purchasers or mortgagees and attachment or execution creditors; that no such "third person" is concerned in these proceedings; and that the respondent has no standing except as the representative of the bankrupt and his general creditors, against whom an unrecorded chattel mortgage is valid —the petitioner contends that the contract here involved (considered as the equivalent of an unrecorded chattel mortgage), having been executed over four months before the petition in bankruptcy was filed, cannot be assailed by the respondent as a voidable preference, because it was not "required by law" to be recorded within the meaning of amended section 60a.

The contention mainly rests on a comparison of original section 3b with the history of the amendment to section 60a.[1] Section 3b provided that the four months within which an act of bankruptcy was available as the basis of a petition against an insolvent should "not expire until four months after the date of the recording, or registering of the transfer * * * when the act consists in having made a transfer * * * for the purpose of giving a preference * * * if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive or continuous possession of the property." The last sentence of section 60a, "Where the preference," etc., was added by the amendment of 1903. As passed by the House the sentence did not end with "required." The continuation was "or permitted, or, if

---

[1] In support of the argument, petitioner cited: Collier on Bankruptcy (6th Ed.) pp. 478, 479; In re Hunt (D. C.) 139 Fed. 283; In re Great Western Mfg. Co., 152 Fed. 123, 81 C. C. A. 341; In re McIntosh, 150 Fed. 546, 80 C. C. A. 250; Meyer Bros. Drug Co. v. Pipkin Drug Co., 136 Fed. 396, 69 C. C. A. 240; In re Doran, 154 Fed. 467, 83 C. C. A. 265; Little v. Holly Brooks Hdwr. Co., 133 Fed. 874, 67 C. C. A. 46, 13 Am. Bankr. Rep. 422. Respondent, on this point, cited: In re Loeser, 148 Fed. 975, 78 C. C. A. 597, 18 L. R. A. (N. S.) 1233; English v. Ross (D. C.) 140 Fed. 630; First Nat. Bank v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148; In re Reynolds (D. C.) 153 Fed. 295, 18 Am. Bankr. Rep. 666; In re Hickerson (D. C.) 162 Fed. 345; McElvain v. Hardesty, 169 Fed. 31, 94 C. C. A. 399; In re Burlage Bros. (D. C.) 169 Fed. 1006.

it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property transferred." These last-quoted words were stricken out by the Senate. Inasmuch as the present case does not involve "possession," but turns wholly upon "recording," the inquiry is limited to the effect of the excision of the words "or permitted" after "required"; and the particular question concerns the soundness of the petitioner's proposition that such excision compels a construction of the amendment as adopted, whereby a chattel mortgage, which a trustee in bankruptcy is assailing as a voidable preference, is not required to be recorded unless an examination of the local law shows that the chattel mortgage, to be impregnable, must be recorded as notice to the persons presently represented by the trustee.

If, as we are inclined to believe, the Court of Appeals for the Sixth Circuit, in In re Loeser, supra, was correct in concluding that "the words 'required' and 'permitted' in the connection used are of synonymous legal meaning," no effect could be attributed to the dropping of the redundant word.

If they are not synonymous, the omission of "permitted" does not imply inevitably (on the basis that no other inference can fairly be drawn) that the lawmakers intended that "required" should be qualified or limited to less than it would have meant if the clause in section 3b and in the original draft of the amendment to section 60a had ended with "required"; for Congress may well have conceived that an insolvent debtor and a diligent creditor were not necessarily to be dealt with in the same way. That is, in the interest of fair and open dealing by those who do business on credit, it might have been thought that an insolvent debtor who does not cause a chattel mortgage given to some of his creditors, to the exclusion of others, to be recorded, whether recording be "required" or only "permitted" by the local law, should be liable to be thrown into bankruptcy; while the diligent creditor (diligence being usually favored in the law) should be permitted, after four months, to retain his security, if on taking it he did all the law "required." See Little v. Hardware Co., supra.

Whether the words be deemed synonymous or not, the dropping of "permitted" only eliminated whatever idea pertained to that word —it could not affect "required," for "required" stands full and untouched, without adverb or clause to cut it down. The primal canon of statutory construction is that the language actually used be given its full and fair meaning, that unqualified words be taken without qualification, and that in the absence of ambiguity extraneous matters be not considered. Under this canon probably nothing more can profitably be said than that, if recording is required, it is required. If required for any purpose, or without purpose, how can it be said to be not required? If recording be not required, unless required for all purposes, it could never be said to be required where the instrument is valid between the immediate parties without recording.

We are further restrained by what seems to us to be the absurd consequences of any other ruling. If a good-faith second mortgage

had been taken, then according to the petitioner's theory the trustee could avoid the preference. But if, as is frequently the case, each mortgage was large enough to exhaust the mortgaged property, why should the trustee consume the free assets in his hands in carrying on one end of a lawsuit between the mortgagees? The trustee could gain nothing for the general creditors whichever way the litigation ended, but would be spending their pittances to benefit a preferred creditor. The same would be true even if the recorded second mortgage was less than the value of the mortgaged property; for, on the hypothesis that the trustee has no right to resist the unrecorded first mortgage on behalf of the general creditors, the surplus above the second mortgage would have to be applied upon the first mortgage. Preferential mortgagees and lienholders are "adverse claimants," entitled to have their rights determined in plenary suits. They seek to withhold or diminish the fund which otherwise would be shared among the general creditors, and the general creditors are in fact interested in resisting that reduction. Now if the trustee may not assail preferences except in favor of one preferred creditor as against another, and if the general creditors have no interest in such contests except to pray that their fund be not therein completely consumed in costs and fees, the amendment to section 60a not merely failed to accomplish any benefit—it brought about a positive injustice.

When the amended section is read against the background of the nature and purpose of the act, our interpretation, we believe, is confirmed. The act is a national act. It practically supplants the state insolvency laws. We think it clear that Congress recognized the vast sweep of interstate commerce and meant to free interstate traders from the confusion and harassment attendant upon a multiplicity of variant local laws. Therefore the act in all its parts ought to be interpreted in a national view, doing away as far as possible with the variances in the local laws. To release an insolvent debtor from his debts is an act of grace. Through the whole law runs the clear purpose of extending grace only to honest debtors. Honesty, fairness, equity is the whole spirit of the law. Nothing is more abhorrent to equity than deceitful appearances covering secret preferences. So the diligent creditor who obtains security must not help the debtor to be dishonest, unfair, secretive; he can hold his security only on condition that he give his fellow creditors a four-months opportunity to determine whether or not they will file a petition in bankruptcy against the debtor. The openness and fairness of the preferred creditor are made the terms upon which he may retain his preference. In this view the only inquiry is: Does the local law require instruments of the kind in question to be recorded? There is no need of further investigation into the scope or purposes of the local law. There is no concern whether or not the trustee represents innocent purchasers, mortgagees, attachment or execution creditors. No issue is to be made with respect to the validity of the lien claims supposed to be represented by the trustee. Section 60b, which authorizes the trustee to "recover the property or its value," says nothing about the representation of the trus-

tee. It is enough on this point that the trustee is trustee, and that the preferred creditor has failed to record the instrument of transfer, if by the local law instruments of that kind are required for any purpose to be recorded. Only by this interpretation can this national law be administered with anything like uniformity respecting preferences.

2. Even if the true interpretation of section 60a compelled us to decide this case upon the meaning of the Illinois statute, with due regard to the construction thereof by the Illinois courts, we could not agree with the petitioner. ·

Recording a mortgage of chattels left in the possession of the mortgagor is required "as against the rights and interests of any third person." The term "third person" is broad enough to include everybody outside of the immediate parties to the instrument and their privies. A simple contract creditor who has not obtained a judgment is just as much a "third person," is just as much a stranger to the mortgage, as is the simple contract creditor who has obtained a judgment. Both have the right to enforce payment, if that can be done. The interests of both are prejudiced if the debtor's property is covered by a fraudulent transfer. If at the time of the fraudulent transfer one creditor has obtained a judgment and the other has not, the only difference is that one has proceeded farther than the other in the enforcement of his rights and the protection of his interests. And when it is said that a fraudulent transfer is void only as to judgment creditors the expression means no more than that a creditor cannot seize his debtor's property until he has obtained some process which authorizes the seizure. As stated in Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885:

"The rule that a creditor must first recover a judgment is simply one of procedure and does not affect the right. Therefore, where the recovery of a judgment becomes impracticable, it is not an indispensable requisite to enforcing the rights of the creditor."

Our examination of the Illinois cases[2] has led us to conclude that the Illinois courts have not decided, independently of procedure and having regard solely to rights, that simple contract creditors, irrespective of the progress they may have made in suing their debtor, are not "third persons" within the meaning and intent of the recording statute. Indeed, we think that the case of Long v. Cockern goes quite a way towards holding that they are. But at all events we consider that the question is open, and that we are therefore at liberty to adopt the construction we believe to be sound and righteous. `

The petition to review and revise is dismissed.

[2] Petitioner cited: Wilson v. Pearson, 20 Ill. 81; Frank v. Miner, 50 Ill. 444; Chipron v. Feikert, 68 Ill. 284; Badger v. Batavia Paper Mfg. Co., 70 Ill. 302; McDowell v. Stewart, 83 Ill. 538; Webster v. Nichols, 104 Ill. 160; Sellers v. Thomas, 185 Ill. 384, 57 N. E. 10; First Nat. Bank v. Barse Com. Co., 198 Ill. 232, 64 N. E. 1097; O'Neil v. Patterson, 52 Ill. App. 26; Niepschield v. Reuss, 92 Ill. App. 636; Farnham v. Friedmeyer, 109 Ill. App. 54. Respondent cited: Blatchford v. Boyden, 122 Ill. 657, 13 N. E. 801; Long v. Cockern, 128 Ill. 29, 21 N. E. 201; Sondheimer v. Graeser, 172 Ill. 293, 50 N. E. 174; Allcock v. Loy, 100 Ill. App. 573; Harding v. Thuet, 124 Ill. App. 437; Second Nat. Bank v. Thuet, 124 Ill. App. 501.